## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## KABLER'S ADMINISTRATOR V. SOUTHERN RAILWAY COMPANY.

### June 14, 1917.

### Absent, Burks, J.*

1. RAILROADS—*Injuries to Persons on or Near Tracks or Premises —Licensee.*—Where the evidence shows that the track where the casualty occurred habitually for many years with the knowledge of defendant had been used as a walkway by the public, it will be assumed that the decedent who met his death by being struck by an engine of defendant company at this point was a licensee to whom it owed the duty of ordinary care to avoid injuring him.

2. RAILROADS—*Injuries to Persons on or Near Tracks or Premises— Last Clear Chance.*—The last clear chance rule, which has frequently been applied to cases in which the plaintiff's negligence has continued to the very moment of the injury, is a qualification of the general rule that contributory negligence bars a recovery, and the principle is that, although the plaintiff has been negligent in exposing himself to peril, and although his negligence may have continued until the accident happened, he may, nevertheless, recover if the defendant, after knowing of his danger and having reason to suppose that he may not save himself, could have avoided the injury by the exercise of ordinary care, and failed to do so.

3. RAILROADS—*Injuries to Persons on or Near Tracks or Premises— Last Clear Chance—Case at Bar.*—Plaintiff's decedent, a licensee, met his death by being run down by an engine of defendant's, while walking on the track of defendant. The track was straight for several hundred yards at the place where the accident happened, it occurred in the daytime, and there was nothing to have prevented those in charge of the train from discovering plaintiff's intestate on the track, or the latter from seeing the approaching train, had each observed the duty of watchful vigilance. It was a cold, blustering day, and plaintiff's intestate, who was an old man, was walking slowly

---

*Case submitted before Judge Burks took his seat.

against the wind, which was blowing his clothing backward from his person as he proceeded on his way, leaning forward, the better to face the wind.

*Held:* That under the evidence the jury would have been warranted in finding that the engineer in charge of the defendant's train, by keeping a reasonable lookout, inevitably must have discovered plaintiff's intestate on the track in time to have averted the accident; and, moreover, they might have found the existence of sufficient superadded facts and circumstances "to put a reasonable man upon his guard that the person upon the track pays no heed to his danger and will take no step to secure his own safety."

4. DEMURRER TO EVIDENCE.—Upon a demurrer to the evidence, if under the evidence the jury might have found for the plaintiff, had the case not been withdrawn from their consideration by the demurrer to the evidence, then the court must so find.

Error to a judgment of the Circuit Court of Campbell county, in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Alexander H. Light,* for the plaintiff in error.

*Coleman, Easley & Coleman* and *R. B. Tunstall,* for the defendant in error.

WHITTLE, P., delivered the opinion of the court.

This action was brought by the administrator of Kabler to recover of the Southern Railway Company damages for the alleged negligent killing of his intestate. The administrator brings error to the judgment of the trial court sustaining defendant's demurrer to plaintiff's evidence.

We must assume for the purpose of this discussion that Kabler, at the time he met his death, was a licensee on the track of defendant, to whom it owed the duty of ordinary care to avoid injuring him, since the evidence shows that

the track between the villages of Evington and Townfork where the casualty occurred, habitually, for many years, with the knowledge of defendant, had been used as a walkway by the public. The track was straight for several hundred yards at the place where the accident happened, it occurred in the daytime, and there was nothing to have prevented those in charge of the train from discovering Kabler on the track, or the latter from seeing the approaching train had each observed the duty of watchful vigilance.

It was a cold, blustering day, and Kabler, who was an old man, was walking slowly against the wind, which was blowing his clothing backward from his person as he proceeded on his way, leaning forward, the better to face the wind.

The doctrine of concurrent negligence and the last clear chance is lucidly treated by Keith, P., in *Southern Ry. Co. v. Bailey*, 110 Va. 833, at page 836, 67 S. E. 365, at page 366 (27 L. R. A. [N. S.] 379). The learned judge, at page 836, observes: "We have held in numerous cases that those controlling a railroad train approaching a depot or any other point at which it was reasonably to be expected that persons would be in danger, must use reasonable care to avoid doing them an injury. We have held in many cases that an engineer, seeing a person upon the track in the apparent possession of all his faculties, would have a right to suppose that such person would get out of the way of the approaching train; in other words, that to see a man upon the track is not necessarily to see that man in a position of danger, because, if in the possession of his faculties, and in the exercise of that care which is incumbent upon him, he looks out for an approaching train, he can reach in an instant a place of safety, and the peril of one upon the track cannot, therefore, be known to those in control of the train until it becomes apparent that he is unconscious of his danger, or so situated as to be incapable of self-protection, when it becomes the duty of those in charge of the train to

do all that they can, consistent with their higher duty to others, to save him from the consequences of his own act. We have held that the duty of guarding an individual against injury, which the law imposes upon a railroad company, is no higher or greater than that which the individual owes to care for his own safety; that all men know that to be upon a railroad track along which trains are frequently moving is to be in a position of danger, and imposes upon the person so exposing himself the obligation to keep a constant lookout for his own protection."

The line of separation between the class of cases where there may not be and those where there may be a recovery by persons injured on railroad tracks finds illustration in numerous decisions of this court.

The case of *Tyler, Receiver,* v. *Sites' Admr.,* was twice reversed on writ of error (88 Va. 470; 13 S. E. 978; *Id.,* 90 Va. 539, 19 S. E. 174). Sites was a deaf mute and was struck while walking along the track of the Shenandoah Valley R. Co., meeting the train with his head bent down, when he was visible for nearly a mile. The court there held that persons in charge of a train have the right to assume that one walking on the track, apparently possessed of his faculties, will get off before the train reaches him, and denied a recovery.

So, in *Morton's Ex'or* v. *Southern Ry. Co.,* 112 Va. 398, 71 S. E. 561, the court affirmed a judgment for the defendant, where Morton, a man seventy years of age, was killed while crossing the railroad track on foot, at a point at which the track in the direction from which the train was coming was straight for at least one mile. When he reached the right of way, "his figure was bent, his head bowed, and his eyes fixed upon the ground," and he was walking slowly and feebly. The court held that the doctrine of the last clear chance did not apply, "since there was no evidence tending to show that there was something in the appearance of the deceased to suggest that he did not intend

to remain in a place of safety until the train passed, or would be unable to clear the track after he had stepped over its west rail."

In *Chesapeake & Ohio Railway Co.* v. *Kidd*, 116 Va. 822, 83 S. E. 933, a recovery was likewise refused where it appeared that Kidd, "with full knowledge of his surroundings voluntarily stepped on the track where it was practically straight, with a clear view for over thirteen hundred feet in the direction from which the train was approaching. He kept no lookout for the train until he was struck, and there was nothing to indicate to those in charge that he was not conscious of his danger and would take no step to secure his own safety.''

A recovery was also denied in the case of the *Chesapeake & Ohio Ry. Co.* v. *Saunders*, 116 Va. 826, 83 S. E. 374. The facts in that case were these: Saunders, a licensee, "an active, strong youth of eighteen years of age, in company with his younger brother, who was sixteen years old, had been picking up coal along the track of the defendant east of the Staunton station, and were returning, walking on the company's main line within the eastern limits of the city. From the point where they took the track they had walked west about four hundred and fifty feet when a train coming from the east ran up behind them. The younger brother heard the train and stepped out of the way, while the deceased, who was some eight feet in advance of his brother, appeared to be oblivious of his danger and * * * was killed." The track from the point of accident east was straight and the view unobstructed for more than eight hundred feet. "There was nothing in the circumstances attending the situation to bring to the knowledge of those in charge of the train any notice that the deceased was paying no heed to his danger and would take no step to secure his own safety."

We shall, in the next place, briefly notice some of the cases which fall within the influence of the qualification of the principle which we have been considering, laid down

by Keith, P., in *Southern Railway Co.* v. *Bailey, supra,* 110 Va. at page 846, 67 S. E. at page 370 (27 L. R. A. [N. S.] 379), as follows: "If, however, it appears that those in control of a train, in the discharge of their admitted duty to keep a reasonable outlook, discover, or should have dis-- covered, a person upon the track, and there be superadded any fact or circumstance brought home to their knowledge, sufficient to put a reasonable man upon his guard, that the person upon the track pays no heed to his danger and will take no step to secure his own safety, then the situation changes and the negligence of the person injured becomes the remote cause or mere condition of the accident, and the negligence of the railroad company the proximate cause, and there may be a recovery."

The case of *Chesapeake & Ohio Railway Company* v. *Corbin's Admx.,* 110 Va. 700, 67 S. E. 179, is a typical case of that series. It was decided November 18, 1909, and the opinion in *Southern Ry. Co.* v. *Bailey* was handed down on March 10th, following. The same judges participated in the decision of both cases (Buchanan, J., being absent), and the opinions in both were unanimous. In *Corbin's Case* the court affirmed the judgment of the circuit court upon a demurrer by the defendant to the plaintiff's evidence in these circumstances: Corbin, who admittedly was a licensee on the track of the defendant was injured in the daytime within the yard limits of the railroad in the town of Covington. He was walking in a westerly direction on the southern track, and stepped off between the tracks to avoid an eastbound freight train. After the train had passed, he crossed the northern track diagonally, and pursued a westerly course, walking on the ends of the cross-ties outside the northern rail. He had proceeded in that manner a distance of twenty or thirty steps when he was struck from behind by a westbound freight train and fatally injured. The train that inflicted the injuries upon him was moving at the rate of ten or twelve miles an hour, and the engineer was leaning out of the side window of his cab. The position he was

occupying when Corbin was struck was visible to a person standing on the end of the cross-tie where decedent was injured for the distance of one hundred and fifty or two hundred yards. He was looking forward in the direction of Corbin; Corbin was walking slowly along the ends of the cross-ties with an umbrella in his left hand, hoisted and the handle resting across his shoulder, and with his dinner bucket in his right hand. The position in which he was holding the umbrella cut off entirely his view of the train, and impaired his ability to hear the noise of its approach. While he was thus apparently wholly unconscious of danger, and seemed to be ill, the train was run down upon him without abating its speed, and without ringing the bell, blowing the whistle, or giving any other signal to warn him of impending death. From the time the engineer could have seen him, and ought to have seen him in the exercise of ordinary care, and discovered his obvious peril, the train could have been slowed down and he could have been apprised of danger by bell, or whistle, or even by spoken word, and his life spared. The court that tried the case was of opinion that the facts narrated would naturally have induced belief in a reasonable mind that Corbin was unconscious of his danger. The judges who participated in the decision of the case then thought, and the judges who constitute the court as at present organized still think, that the case was rightly decided, and that the request of counsel for the defendant in error that it be overruled should be denied. It is plainly, we think, within the qualification to the general rule formulated by Keith, P., in the *Bailey Case.* It may also be mentioned that the case has been referred to with approval in *Southern Railway Co.* v. *Bailey, supra,* 110 Va. p. 845, 67 S. E. 365, 27 L. R. A. (N. S.) 379; *C & O. Ry. Co.* v. *Shipp, supra,* 111 Va. p. 381, 69 S. E. 925; *Southern Railway Co.* v. *Darnell,* 114 Va. 312, 76 S. E. 291; *Norfolk So. Ry. Co.* v. *Crocker,* 117 Va. 327, 331, 84 S. E. 681. Moreover, the

court in *Corbin's Case,* cites twenty-two Virginia decisions and several authoritative text-writers sustaining the conclusions therein.

In *Chesapeake & Ohio Ry. Co.* v. *Shipp,* 111 Va. 377, 69 S. E. 925, Shipp was struck by a caboose car which was "jerked" on the main line in making a flying switch. The brakeman in charge of the caboose could have stopped it in twenty feet or less, but ran into Shipp, who was one hundred and thirty-five feet from where the caboose was "jerked," with his back in that direction, stooping over in a bending position, and engaged with a wrench in tightening bolts upon a fish-bar. Upon these facts the judgment in his favor was affirmed.

In *Southern Ry. Co.* v. *Baptist,* 114 Va. 723, 77 S. E. 477, the recovery was also sustained. Baptist, while in full view of the engineer in charge of an approaching train, and in time for it to have been stopped, was struggling with and dragged on the track by a frightened horse, which he had seized by the bridle in response to a call for help from the driver.

The latest case decided by this court germane to the discussion is that of *Norfolk, &c. R. Co.* v. *Crocker,* 117 Va. 327, 84 S. E. 681, where the recovery was upheld for personal injuries in these circumstances: Crocker, on the invitation of the conductor of the defendant, went upon the track and was examining a defective drawhead on the end of one of several flat cars standing on the track, coupled together. While thus engaged, the conductor, without warning to Crocker, signalled the engineman to couple his engine to the string of flat cars. When the coupling was made the cars were driven forward by the impact and Crocker was knocked down and severely injured. Kelly, J., in delivering the opinion of the court in this case, says: "The rule in question" (the "last clear chance") "which has frequently been applied to cases in which the plaintiff's negligence has continued to the very moment of the injury, is a qualification of the general rule that contributory negligence bars a

recovery, and the principle is that, although the plaintiff has been negligent in exposing himself to peril, and although his negligence may have continued until the accident happened, he may, nevertheless, recover if the defendant, after knowing of his danger and having reason to suppose that he may not save himself, could have avoided the injury by the exercise of ordinary care, and failed to do so. This principle has been adopted by practically all the courts of last resort, both in England and in this country, and has been repeatedly endorsed by this court, some of the recent Virginia decisions containing a very full discussion of the subject, and an extended review of the authorities. *C. & O. Ry. Co.* v. *Corbin*, 110 Va. 700, 67 S. E. 179; *Southern Ry. Co.* v. *Bailey*, 110 Va. 833, 67 S. E. 365, 27 L. R. A. (N. S.) 379; *C. & O. Ry. Co.* v. *Shipp*, 111 Va. 377, 69 S. E. 925. See also 1 Shear. & Red. on Neg. (6th ed.), sec. 99; 2 Thompson on Neg., sec. 1737; 8 Thompson on Neg. (White's Supp.), sec. 1737."

Under the evidence in this case the jury would have been warranted in finding that the engineer in charge of the defendant in error's train, by keeping a reasonable lookout, inevitably must have discovered Kabler on the track in time to have averted the accident; and, moreover, they might have found the existence of sufficient superadded facts and circumstances "to put a reasonable man upon his guard that the person upon the track pays no heed to his danger and will take no step to secure his own safety." If, under the evidence, the jury might have made these findings had the case not been withdrawn from their consideration by the demurrer to the evidence, then, upon well settled principles, the court must so find.

The instant case is controlled by the second line of authorities to which attention has been called; and the judgment under review must be reversed, and judgment entered in favor of the plaintiff in error for the damages assessed by the jury.

*Reversed.*